UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

JAKEEME ORLANDO GRIFFIN,

                  Petitioner,                Case No. 2:18-cv-21

v.                                    Honorable Gordon J. Quist

MITCH PERRY,

                  Respondent.

_____/

## REPORT AND RECOMMENDATION

        This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jakeeme Orlando Griffin is incarcerated with the Michigan Department of Corrections at the Woodland Center Correctional Facility in Whitmore Lake, Livingston County, Michigan. On October 10, 2014, following a four-day jury trial in the Berrien County Circuit Court, Petitioner was convicted of two counts of felonious assault, in violation of Mich. Comp. Laws § 750.82; two counts of assault with intent to do great bodily harm (AGBH), in violation of Mich. Comp. Laws § 750.84; one count of carrying a concealed weapon (CCW), in violation of Mich. Comp. Laws § 750.227; one count of felon in possession of a firearm (felon-in-possession), in violation of Mich. Comp. Laws § 750.224f; and one count of possession of a firearm during the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b.  On November 17, 2014, the court sentenced Petitioner to concurrent prison terms of 2 to 6 years on each count of felonious assault, 5 to 15 years on each count of AGBH, 3 years to 7 years, 6 months for CCW, and 3 years to 7 years, 6 months for felon-in-possession.  Those concurrent sentences were to be served consecutively to a sentence of 2 years for felony-firearm.

On January 29, 2018, Petitioner timely filed his habeas corpus petition raising six grounds for relief, as follows:

I.      The prosecutor engaged in misconduct and denied [Petitioner] a fair trial when he bolstered the testimony of the state's witnesses and called [Petitioner] a liar during closing.

II.     [Petitioner's] federal and state constitutional rights to the effective assistance of counsel were violated where counsel failed to make crucial objections.

III.    [Petitioner's] convictions must be reversed where the evidence was insufficient to prove beyond a reasonable doubt that [Petitioner] committed the crimes.

IV.     [The] Sixth Amendment was violated where [the] jury was not sworn in violation of [the Michigan Court Rules] and federal law.

V.      [Petitioner's] Fifth and Fourteenth Amendment [rights] were violated when [he] was overcharged contrary to law.

VI.     Prior Record Variables and Offense Variables [were scored incorrectly].

(Pet., ECF No. 1, PageID.5-10, 15, 17.)   Respondent has filed an answer to the petition (ECF No. 10) stating that the grounds should be denied because they are procedurally defaulted, meritless, or both.   Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.   Accordingly, I recommend that the petition be denied.

## Discussion

### I.      Factual allegations

The Michigan Court of Appeals described the facts underlying Petitioner's convictions as follows:

Defendant's convictions arise from an altercation occurring on April 18, 2014, during which he fired a handgun in the direction of the victims, Juan Hassel, Jr., and Ponenail "P.J." Wright, Jr.   At trial, defendant admitted that he fired the handgun but contended that he did so in self-defense.   Witnesses at trial offered conflicting testimony.   The altercation arose from a long-running feud between defendant's younger brother, Henry Griffin, and Anfernee Kyles, who lived next

2

door.  The feud had resulted in several physical altercations and had involved the two boys' families and friends.  On the date of this incident, defendant arrived at his home in his grandmother's vehicle.  Hassel and Wright were in the driveway next door, exiting a U-Haul truck.  The parties exchanged words.  Defendant and his mother testified that Wright threatened defendant's life.  Other witnesses testified that defendant threatened Wright and Hassel's life.  In any event, defendant acknowledged that he fired shots toward the two victims.  Defendant alleged that he fired because Wright was holding a book bag and had his hand on what defendant believed to be the handle of a firearm.  There was testimony that after defendant started shooting, Hassel retrieved a handgun from the cab of the U-Haul and returned fire.  Defendant was charged and convicted of firing shots at Hassel and Wright.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1311.)  "The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)." *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016).  Although Petitioner denies that the events occurred as described by the other witnesses, his habeas challenges do not call into question the accuracy of the appellate court's description of the testimony.

After hearing testimony for two and one-half days, closing arguments, and instructions, the jurors deliberated for about two hours before finding Petitioner guilty of five of the counts as charged:  two counts of felonious assault, one count of carrying a concealed weapon, one count of felon-in-possession, and one count of felony-firearm.  Petitioner was also charged with two counts of assault with intent to murder.  The jurors did not find Petitioner guilty of those charges, instead they found him guilty of the lesser charge of assault with intent to do great bodily harm with respect to each victim.  The trial court sentenced Petitioner as described above.

Petitioner moved for a new trial.  (Pet'r's New Trial Mot., ECF No. 11-10, PageID.1339–1380.)  That request was denied.  (Berrien Cnty. Cir. Ct. Order, ECF No. 11-10, PageID.1383–1387.)

Petitioner directly appealed his convictions and sentences.  In the brief he filed with the assistance of counsel he raised the issues he raises in this Court as habeas grounds I–III.

(Pet'r's Appeal Br., ECF No. 11-10, PageID.1391.)  By way of *pro per* supplemental briefs and motions, Petitioner raised in the court of appeals the issues he raises in this Court as habeas grounds IV–VI.  By opinion issued October 6, 2016, the Michigan Court of Appeals considered and rejected each of the issues Petitioner raised, affirming the trial court in all respects.

Petitioner then filed an application for leave to appeal to the Michigan Supreme Court raising the same issues he raised in the court of appeals.  By order entered November 29, 2017, the Supreme Court denied Petitioner's application for leave to appeal the October 6, 2016 judgment of the Court of Appeals.  (Mich. Order, ECF No. 11-11, PageID.1544.)  This timely petition followed.

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

4

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Prosecutorial misconduct (habeas ground I)

Petitioner contends that his trial was rendered unfair by the prosecutor's closing argument.  He claims that the prosecutor improperly "bolstered" the testimony of several witnesses

who testified favorably to the prosecution[1] and then improperly denigrated Petitioner's testimony by calling him a "liar."  For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11–12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court.  *See id.* at 12–13; *Darden*, 477 U.S. at 181–82; *Donnelly*, 416 U.S. at 646–47; *Berger v. United States*, 295 U.S. 78, 84–85 (1935).  "[A] prosecutor's comments violate the defendant's right to due process only if, ***in context***, they 'undermine[d] the fundamental fairness of the trial and contribute[d] to a miscarriage of justice.'"  *Winowiecki v. Gidley*, No. 20-1461, 2020 WL 6743472, at *2 (6th Cir. Sept. 8, 2020) (quoting *Young*, 470 U.S. at 16) (emphasis added); *see also United States v. McQuarrie*, 817 F. App'x 63, 81 (6th Cir. 2020) ("[C]ontext is key . . . .").

---

[1] The terms "vouching" and "bolstering" are sometimes used interchangeably.  In *United States v. Francis*, 170 F.3d 546 (6th Cir. 1999), the Sixth Circuit acknowledged that the two practices "are much alike[.]"  *Id*. at 551.  Nonetheless, the *Francis* court stated that "[i]mproper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the office of the United States Attorney behind that witness[,]" while "[b]olstering occurs when the prosecutor implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury."  *Id*. at 550, 551.

"[T]he government may not rely on prejudicial facts not in evidence when making its closing arguments." *United States v. Roach*, 502 F.3d 425, 434 (6th Cir. 2007).  Nonetheless, "[a] prosecutor has 'leeway to argue reasonable inferences from the evidence' during closing arguments." *United States v. Crosgrove*, 637 F.3d 646, 664 (6th Cir. 2011) (*quoting Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000)).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "the Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

There was really no dispute that Petitioner fired a handgun at Hassel and Wright.  Criminal responsibility for that act turned on Petitioner's claim that he acted in self-defense.  The circumstances surrounding Petitioner's use of the gun were critical.  The jurors were called upon to decide which account of the event was more credible, the account offered by Petitioner or the account offered by the prosecutor's witnesses.  Not surprisingly, therefore, the prosecutor's closing emphasized witness credibility:  "Credibility in this case is very important, the credibility of the witnesses, so I want you to think about the credibility as we[']re going through . . . this evidence

and think about the people who testified and what they had to gain here and why they might testify

a certain way." (Trial Tr. IV, ECF No. 11-7, PageID.1136.) The prosecutor then went through,

witness by witness, and reviewed the testimony and reasons why the testimony was or was not

credible. (*Id*., PageID.1136–1161.) The prosecutor's analysis of credibility in light of the evidence

ultimately extended to Petitioner's testimony. The prosecutor said several times that Petitioner

lied.

   The Michigan Court of Appeals prefaced its analysis of Petitioner's claims as

follows:

>   Claims of prosecutorial misconduct are decided on a case-by-case basis,
> reviewing a prosecutor's remarks in context to determine whether the defendant
> was denied a fair and impartial trial. *Brown*, 294 Mich App at 382-383. "A
> prosecutor's comments are to be evaluated in light of defense arguments and the
> relationship the comments bear to the evidence admitted at trial. Otherwise
> improper prosecutorial conduct or remarks might not require reversal if they
> address issues raised by defense counsel." *People v Dobek*, 274 Mich App 58, 64;
> 732 NW2d 546 (2007) (citation omitted). The prosecutor may properly argue the
> evidence and all reasonable inferences arising from it that relate to the prosecution's
> theory of the case. *Id*. at 66. Further, the prosecutor has wide discretion in arguing
> reasonable inferences from the evidence and need not use only meek language. *Id*.
> But a prosecutor may not vouch for the credibility of a witness by implying special
> knowledge concerning the witness's truthfulness. *People v Bahoda*, 448 Mich 261,
> 276; 531 NW2d 659 (1995). "A prosecutor may, however, argue from the facts
> that a witness is credible or that the defendant or another witness is not worthy of
> belief." *People v Howard*, 226 Mich App 528, 548; 575 NW2d 16 (1997).

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1312.) The appellate court then measured the

prosecutor's arguments against that standard.

   Petitioner excerpted passages from the prosecutor's argument to identify the

objectionable "bolstering." The court of appeals considered each such excerpt and assessed

whether it was a credibility argument based on the evidence or reasonable inferences from the

evidence—which would be permissible—or whether it was premised on some implied special

knowledge concerning the witness's truthfulness—which would be improper vouching or

bolstering.  In each instance, the court concluded that the prosecutor's argument was based on the evidence or reasonable inferences therefrom.  (*Id.*, PageID.1312–1314.)

"The prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two dangers:  such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence."  *United States v. Young*, 470 U.S. 1, 18–19 (1985) (citing *Berger*, 295 U.S. at 88–89).  Yet "a prosecutor may ask the jury to draw reasonable inferences of credibility from the evidence presented . . . ."  *Willoughby v. White*, 786 F. App'x 506, 513 (6th Cir. 2019).  Thus, the court of appeals analytical approach is entirely consistent with clearly established federal law.

Critically, Petitioner never responds to the court of appeals' determinations regarding the record support for the prosecutor's credibility arguments.  In his application for leave to appeal to the Michigan Supreme Court, he shifts his argument away from the "bolstering" claim.  He mentions it in his description of the issue, but his explanation of the issue focuses exclusively on that part of the argument where the prosecutor accused Petitioner of being incredible, not the part of the argument where the prosecutor argued that the other witnesses were credible.  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-11, PageID.1546–1548.)  The focus shifts again in his habeas petition.  The description of the issue is the same, but the petition offers supporting facts regarding the prosecutor's description of Petitioner as threatening, the prosecutor's failure to

produce the victims, and the prosecutor's argument, with no supportive evidence, that Petitioner

concealed the weapon in his grandmother's car.[2]  (Pet., ECF No. 1, PageID.5.)

The court of appeals' determinations regarding the record are presumed to be true.

Petitioner can rebut the presumption with clear and convincing evidence.  He does not respond to

those determinations, much less offer clear and convincing contrary evidence.  The Court has

examined the evidentiary support for the prosecutor's witness credibility arguments as identified

by the Michigan Court of Appeals.  The court of appeals' determinations that the prosecutor's

argument did not bear the hallmarks of impermissible vouching or bolstering, but were instead fair

comment on the evidence regarding credibility, is well-supported by the record.  Moreover, the

appellate court's conclusion that the comments were not impermissible vouching or prosecutorial

misconduct is not contrary to, or an unreasonable application of, the clearly established federal

law of *Darden* or *Young*.  Accordingly, Petitioner is not entitled to habeas relief on this claim.

Petitioner's argument that the prosecutor impermissibly called him a liar fares no

better.  The court of appeals addressed that argument as follows:

> The prosecutor's characterization of defendant as a liar did not constitute
> misconduct because the prosecutor permissibly argued that the jury should not
> believe defendant based on the evidence admitted at trial.  *Howard*, 226 Mich App
> at 548.  Defendant admitted that he initially lied to the police when he told them
> that his friend Marcus fired the gun from defendant's front porch, and he eventually
> acknowledged that it was he who fired the gun.  Defendant also admitted that he
> lied when he originally told police that Hassel and Wright both had guns and shot

---

[2] Petitioner failed to raise these specific issues in the state courts.  It is not clear what Petitioner means by "the prosecutor inferred Defendant was threat[e]ning in his relationships." (Pet., ECF No. 1, PageID.5.)  The undersigned has carefully reviewed the closing arguments and the prosecutor never stated that Petitioner threatened anyone.  On the other hand, it is apparent what Petitioner is referring to when he states that the prosecutor "inferred that Mr. Griffin had a gun in his grandmother's car[.]" (*Id.*)  Petitioner testified that he put the gun in the freezer.  The prosecutor noted that other witnesses testified that Petitioner did not go into the house after the shooting.  Instead, Petitioner got into the car.  The prosecutor invited the reasonable inference that if Petitioner possessed the gun and got into the car without disposing of it—and there was no testimony other than Petitioner's contradicted claim that he disposed of it in the freezer—then Petitioner possessed the gun in his grandmother's car.  (Trial Tr. IV, ECF No. 11-7, PageID.1222.) Petitioner challenges that inference based on his testimony, but it is not unreasonable based on the testimony that indicated Petitioner never went into the house.  Petitioner's third claim, that the prosecutor did not produce the victims to testify at trial, does not state any misconduct on the part of the prosecutor.

at him first.  At trial, defendant testified that he shot first once he saw Hassel's hand in a book bag holding the handle of what defendant believed to be a gun.  In other words, the prosecutor did not imply that he had some special knowledge that defendant had lied.  In fact, he argued from the facts in evidence, and, indeed, defendant's own admissions, that defendant had lied.  The fact that defendant lied about the particular facts of the incident at issue allowed the prosecutor to argue the reasonable inference that defendant lied in an attempt to avoid criminal liability.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1315.)    In fact, Petitioner's counsel also acknowledged that Petitioner had lied.  (Trial Tr. IV, ECF No. 11-7, PageID.1208.)

Where the prosecutor's attack on a defendant's credibility is based on the evidence presented in court, the attack is not improper:

If a defendant testifies as here, a prosecutor may attack his credibility to the same extent as any other witness.  *See Raffel v. United States*, 271 U.S. 494, 497, (1926), *see also Fitzpatrick v. United States*, 178 U.S. 304, 315 (1900).  This Court has held that a prosecutor may assert that a defendant is lying during her closing argument when emphasizing discrepancies between the evidence and that defendant's testimony.  *See United States v. Veal*, 23 F.3d 985, 989 (6th Cir. 1994).  To avoid impropriety, however, such comments must "reflect reasonable inferences from the evidence adduced at trial."  *See id.* (quoting *United States v. Goodapple*, 958 F.2d 1402, 1409–10 (7th Cir. 1992)).  Again, misconduct occurs when a jury could reasonably believe that the prosecutor was, instead, expressing a personal opinion as to the witness's credibility.  *Taylor*, 985 F.2d at 846 (citing *United States v. Causey*, 834 F.2d 1277, 1283 (6th Cir. 1987), *cert. denied*, 486 U.S. 1034 (1988)).

*United States v. Francis*, 170 F.3d 546, 551 (6th Cir. 1999).  Here, where Petitioner admitted he lied, the prosecutor's reference to Petitioner as a liar is not troublesome.  Moreover, in those instances where the prosecutor questioned Petitioner's credibility regarding issues other than those instances when Petitioner admitted his lies, the prosecutor tied his arguments to the evidence offered at trial or reasonable inferences from that evidence.  Petitioner does not point to any part of the prosecutor's argument that suggests the prosecutor is inviting the jurors to accept the characterization of Petitioner as a liar simply because the prosecutor believes that to be the case.

The court of appeals' determinations of fact with respect to this prosecutorial misconduct claim are reasonable.  And Petitioner has failed to show that the court of appeals'

resolution of this claim based on those reasonable fact determinations is contrary to, or an unreasonable application of, *Darden* or *Young*—the clearly established federal law regarding such prosecutorial misconduct.  Accordingly, Petitioner is not entitled to habeas relief on the claim.

## IV.    Sufficiency of the evidence (habeas ground III)

Petitioner next argues that there was insufficient evidence to permit a finding of guilt beyond a reasonable doubt on the charges.[3]  In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court announced the following standard for resolving sufficiency claims:  the court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319.  The *Jackson* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.  Witness credibility remains the province of the jury, *see Herrera v. Collins*, 506 U.S. 390, 401-02 (1993), and an attack on witness credibility constitutes a challenge to the quality, but not the sufficiency of the government's evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002).  The habeas court need only examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to

---

[3] Petitioner also argues that his convictions are against the great weight of the evidence.  The Michigan Court of Appeal concluded that the trial court did not abuse its discretion in denying Petitioner's great-weight-of-the-evidence claim.  (Mich. Ct. App. Op., ECF No. 11-10, PageID.1319.)  The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial.  *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998).  This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id*. at 133 n.8.  "[A] great-weight-of-the-evidence claim . . . raise[s] only a state-law issue that is not cognizable on federal habeas review[.]"  *Phillips v. Vashaw*, No. 20-1280, 2020 WL 5758680, at *1 (6th Cir. Jul. 30, 2020).  The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").  The state court's decision regarding the great-weight-of-the-evidence claim is axiomatically correct on habeas review.  Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdict was not against the great weight of the evidence is final.

the elements of the crime as established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196–97 (6th Cir. 1988).

Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).   This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds.   *Davis*, 658 F.3d at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

In resolving that claim, the court of appeals applied the following standard:

> When determining whether sufficient evidence supports a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  *People v Stevens*, 306 Mich App 620, 628; 858 NW2d 98 (2014).  Circumstantial evidence and reasonable inferences that arise therefrom may be sufficient to prove the elements of an offense. *Harverson*, 291 Mich App 176.  When reviewing the sufficiency of evidence, we will not interfere with the jury's determinations regarding the weight of the evidence or the credibility of witnesses.  *Stevens*, 306 Mich App at 628.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1315–1316.)  The statement of the standard is based on state authority; but the standard is functionally identical to the *Jackson* standard.  Indeed, if one looks to the state authority cited, and then the state authority cited in that case, and so on, the state authority is ultimately founded on *Jackson*.  *People v. Wolfe*, 489 N.W.2d 748, 750–51 (Mich. 1992).  Thus, the Michigan Court of Appeals obviously applied the correct standard to resolve Petitioner's sufficiency claim, leaving only the question whether the court applied the standard reasonably.

14

The court of appeals applied the standard exactly as *Jackson* directs.  It identified the elements of the charged crimes as established by state law and then considered the evidence introduced at trial to determine whether, viewed in a light most favorable to the prosecution, that evidence would support a determination of guilt beyond a reasonable doubt.  (Mich. Ct. App. Op., ECF No. 11-10, PageID.1317–1318.)  Petitioner's attack on the appellate court's decision is focused principally on the claim that he acted in self-defense—which is addressed below—but he also suggests that the evidence was insufficient to convict him of AGBH because "no one got injured."  (Pet'r's Appl. for Leave to Appeal, ECF No. 11-11, PageID.1558–1559.)

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts.  *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law.").  The elements of AGBH, according to the court of appeals, are "(1) an assault (an attempt or threat to physically hurt another), with (2) the intent to do great bodily harm less than murder."  (Mich. Ct. App. Op., ECF No. 11-10, PageID.1317.)  Moreover, "[i]ntent to cause serious harm can be inferred form the defendant's actions, including the use of a dangerous weapon or the making of threats."  (*Id.*) (internal quotes omitted).  The court described the evidence regarding these elements as follows:

> Defendant admitted to firing at least two shots in the direction of Hassel and Wright.  Other witnesses testified that defendant fired at least five shots in that direction.  Two bullet holes were found in the side of the U-Haul.  There was also testimony that defendant threatened to kill Hassel and Wright before firing the shots.  Thus, sufficient evidence was presented to allow a rational jury to conclude that defendant attempted and threatened to harm Hassel and Wright, the first

15

necessary element.  There was also sufficient evidence to allow a rational jury to conclude that defendant shot at Wright and Hassel with the intent to cause a serious injury of an aggravated nature, i.e., to do great bodily harm less than murder. Specifically, evidence showed defendant used a dangerous weapon, and he threatened to kill both victims.

(*Id*.)  The court of appeals noted that the jury's rejection of Petitioner's claim that he did not intend to harm the victims was a question of credibility reserved to the jury.  (*Id*.) And the court specifically rejected Petitioner's suggestion that AGBH required a physical injury.  (*Id*.)

The court of appeals rejection of Petitioner's sufficiency claims with regard to each element of the charges was neither contrary to, nor an unreasonable application of, clearly established federal law.  Moreover, the factual determinations regarding the evidence upon which the rejection relied are well-supported by the record.  Accordingly, Petitioner is not entitled to habeas relief on that portion of his sufficiency claims that is based on the prosecutor's failure to establish the elements of the offenses.

Although Petitioner touches upon an alleged insufficiency of evidence regarding the elements of the offenses, the heart of his sufficiency challenge is his claim that he acted in self-defense.  The court of appeals resolved Petitioner's sufficiency claim regarding self-defense as follows:

The gravamen of defendant's sufficiency and great-weight arguments on appeal is that the evidence supported that he acted in self-defense; therefore, he was not criminally liable for his actions.

"Once a defendant satisfies the initial burden of producing some evidence from which a jury could conclude that the elements necessary to establish a prima facie defense of self-defense exist, the prosecution bears the burden of disproving the affirmative defense of self-defense beyond a reasonable doubt." *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010).  The Self-Defense Act, MCL 780.971 *et seq*., has codified the circumstances in which a person may use self-defense.  MCL 780.972 provides in relevant part:

(1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against

16

another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:

> (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.

Thus, consistent with the common law, a person who uses excessive force or acts as the initial aggressor cannot be found to have acted in justifiable self-defense. *People v Guajardo*, 300 Mich App 26, 35-36, 43; 832 NW2d 409 (2013).

Viewed in the light most favorable to the prosecution, the evidence was sufficient to support a rational jury finding that defendant did not act in self-defense.  Specifically, the evidence supported a jury finding that defendant was the initial aggressor and used excessive force.   Several witnesses testified that defendant threatened Hassel and Wright before being threatened himself.  More than one witness testified that defendant threatened to kill the victims.  Indeed, some witnesses testified that Hassel and Wright did not threaten defendant at all.  Those who testified that Wright threatened defendant first (other than defendant himself) agreed that Wright did so from the street, without brandishing a weapon, while defendant stood on his porch.  So, defendant's response of firing a gun toward Wright supported a finding of excessive force.  Most important to the finding that defendant was the initial aggressor, however, was the nearly unanimous testimony that defendant fired first.  Indeed, defendant acknowledged that he did so.  The majority of witnesses testified that Hassel and Wright either did not fire back at all or only did so after retrieving a gun from the U-Haul after defendant opened fire.  Many witnesses testified that Hassel and Wright did not approach defendant or step onto his property.  Because defendant admitted to firing first, and ample testimony supported that he did so without being threatened with a gun or other deadly force, the evidence was sufficient to support a finding that he was the initial aggressor.  To the extent Wright threatened defendant to a weapon-free fight in the street, we again conclude that the evidence was sufficient to support a finding that defendant responded with excessive force by firing a gun at Wright and Hassel.  Although some of the conflicting testimony supported defendant's version of events, we will not interfere with the jury's determinations of witness credibility.  *Stevens*, 306 Mich App at 628, 630–631.  Accordingly, viewed in the light most favorable to the prosecution, sufficient evidence was presented to allow a rational jury to conclude beyond a reasonable doubt that defendant used deadly force when he did not honestly and reasonably believe it to be necessary to prevent the imminent death or great bodily harm of himself or another individual.  MCL 780.972(1)(a).

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1316–1317).

Although a prosecutor is required to disprove a claim of self-defense under state

law, *People v. Watts*, 232 N.W.2d 396, 398 (Mich. Ct. App. 1975), "'[p]roof of the nonexistence

17

of . . . affirmative defenses has never been constitutionally required,'" *Smith v. United States*, 568 U.S. 106, 110 (2013) (quoting *Patterson v. New York*, 432 U.S. 197, 210 (1977)).  Thus, the Constitution did not require the prosecution in Petitioner's case to disprove self-defense beyond a reasonable doubt.  *See Gilmore v. Taylor*, 508 U.S. 333, 359 (1993) (Blackmun, J., dissenting) ("In those States in which self-defense is an affirmative defense to murder, the Constitution does not require that the prosecution disprove self-defense beyond a reasonable doubt."); *Martin v. Ohio*, 480 U.S. 228, 233–36 (1987) (rejecting claim that putting burden on defendant to prove self-defense is unconstitutional); *see also Allen*, 858 F.2d at 1197 (explaining that habeas review of sufficiency-of-the-evidence claims is limited to elements of the crimes as defined by state law and distinguished from affirmative defenses, citing *Engle v. Isaac*, 456 U.S. 107 (1982), and *Duffy v. Foltz*, 804 F.2d 50 (6th Cir. 1986)).

Put another way, "the due process 'sufficient evidence' guarantee does not implicate affirmative defenses, because proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime."  *Caldwell v. Russell*, 181 F.3d 731, 740 (6th Cir. 1999).  In raising this challenge, Petitioner "has only faulted the jury's refusal to credit his proffered affirmative excuse or justification for that purposeful killing."  *Id.*  Thus, any claim that the prosecutor failed to disprove his affirmative defense is merely a state-law claim that is not cognizable on habeas review.  *Id.*; *Allen*, 858 F.2d at 1200.  Petitioner's self-defense-based sufficiency claim, therefore, does not warrant habeas relief.

Moreover, even if the state law requirement that the prosecutor disprove the affirmative defense fell under the umbrella of the constitutional requirement of sufficient evidence, Petitioner has failed to show that the state court's determination that the prosecutor met his burden

with sufficient evidence is contrary to, or an unreasonable application of, the clearly established federal law of *Jackson*.

Unquestionably, if one credits Petitioner's trial testimony (and discredits the testimony of all the other witnesses) and if one views the evidence in a light that favors Petitioner, there was sufficient evidence for the jury to find that the prosecutor had failed to disprove beyond a reasonable doubt that Petitioner acted in self-defense. Petitioner invites the Court to do just that—to find him credible and view the evidence in a light that favors him. Petitioner's invitation ignores the *Jackson* standard. Indeed, Petitioner turns the *Jackson* standard on its head. Under *Jackson*, the Court must view the evidence in a light that favors the prosecution and leave issues of credibility to the jury.

Although Petitioner attempts to explain away the evidence relied upon by the state court of appeals in its sufficiency analysis, he does not argue that the court's statement of that evidence is unreasonable or that it is not supported by the record. The evidence identified by the state court called into question Petitioner's credibility regarding his belief that the victim had a gun and was reaching for it. So long as there is evidence calling into question Petitioner's version of the events, under the *Jackson* standard, there is sufficient evidence to find that Petitioner did not act in self-defense. Accordingly, if the prosecutor were constitutionally required to present sufficient evidence to disprove Petitioner's claim of self-defense, Petitioner has failed to show that the Michigan Court of Appeals' determination—that the evidence was sufficient to disprove self-defense—is contrary to, or an unreasonable application of, *Jackson*. Accordingly, Petitioner is not entitled to habeas relief on his self-defense-based sufficiency claim.

## V.    Failure to administer the oath to the jurors (habeas ground IV)

The Berrien County Circuit Court docket sheet indicates that on October 7, 2014, the jury was selected and sworn, and then the jurors heard opening arguments. (Berrien Cnty. Cir.

19

Ct. Docket Sheet, ECF No. 11-1, PageID.139.)  The transcript of the first day of trial, however,

begins at 4:07 p.m. on that day.  (Trial Tr. I, ECF No. 11-4, PageID.272.)  At that time, the court

provided preliminary instructions and the jurors heard opening arguments before court was

adjourned for the day.  It is not clear why the entire first day—including the jury selection and the

oath—was not transcribed.  The transcript of the day was ordered.  (Claim of Appeal and Order

Appointing Counsel, ECF No. 11-10, PageID.1325.)

In Petitioner's *pro per* supplemental appeal brief, based on the fact that there is no

transcript of the jury selection and oath, he argues that there was no jury selection or oath.  The

court of appeals rejected the claim:

> These claims fail because defendant has not furnished this Court with a
> record sufficient to substantiate his claims of error.  *See People v Elston*, 462 Mich
> 751, 762; 614 NW2d 595 (2000).  Specifically, this Court does not have either the
> transcript of the jury selection or the oath administration.  The trial court register of
> actions indicates that the jury was selected and sworn on the first day of trial.
> Defendant has failed to provide evidence that the jury selection and oath
> administration did not occur; therefore, he has failed to establish that error occurred
> and is not entitled to relief.  *Pipes*, 475 Mich at 279.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1320.)  For the same reasons the court of appeals

denied relief, this Court must deny relief as well.  Petitioner has simply not proven that the trial

court failed to conduct jury selection or to administer the proper jury oath.  Absent some support

for his allegations, Petitioner has failed to demonstrate that the court of appeals' rejection of his

claim is contrary to, or an unreasonable application of, clearly established federal law.  Petitioner

is not entitled to relief on this claim.

## VI.    Overcharged/Double Jeopardy (habeas ground V)

Petitioner next objects that the prosecutor "overcharged" him.  This objection is

based on Petitioner's contention that the AGBH charge was inappropriate where Petitioner did not

cause physical injury.  That objection is just a restatement of his sufficiency claim which is addressed above.

As part of this claim, however, Petitioner also argues that the charges violate the prohibition against double jeopardy.  Petitioner claims he received multiple punishments for the same offense because the AGBH and felonious assault counts punish the same conduct and because the CCW, felon-in-possession, and felony-firearm counts punish the same conduct.

"The Fifth Amendment guarantee against double jeopardy . . . consist[s] of three separate constitutional protections[: (1) i]t protects against a second prosecution for the same offense after acquittal[; (2) i]t protects against a second prosecution for the same offense after conviction[; and (3) i]t protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  Petitioner's claim implicates the third layer of protection—the protection against multiple punishments for the same offense.

The protection against multiple punishments for the same criminal act "is designed to insure that the sentencing discretion of courts is confined to the limits established by the legislature."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984).  "The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial."  *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (footnote omitted).  In that sense, the guarantee serves principally as a restraint on courts and prosecutors, not on legislatures.  *Id.*

"The critical inquiry is whether Congress intended to punish each statutory violation separately."  *Jeffers v. United States*, 432 U.S. 137, 155 (1977).  One way to suss out whether the legislature intended to punish statutory violations separately is through the "same-

21

elements" test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Brown*, 432 U.S. at 166; *Ianelli v. United States*, 420 U.S. 770, 785 n.17 ("The test articulated in *Blockburger* . . . serves a generally similar function of identifying congressional intent to impose separate sanctions for multiple offenses arising in the course of a single act or transaction."). The test inquires whether each offense contains an element not contained in the other. *Brown*, 432 U.S. at 166. If not, they are the "same offense" and double jeopardy may bar cumulative punishment and a second prosecution. *Id.* at 168-69.[4] If the two offenses are different, absent some express statement to the contrary, the legislature's intent to punish them separately is apparent. *See, e.g., Jeffers*, 432 U.S. at 155 ("Since the two offenses were different, there was no need to go further.").

      If this Court were writing on a blank slate, it would evaluate whether the Michigan legislature intended to impose cumulative punishments for the various offense combinations that Petitioner finds objectionable and, as part of that evaluation, would employ the *Blockburger* test. But the Court is not writing on a blank slate. The Michigan Court of Appeals resolved Petitioner's double jeopardy claims by determining the legislative intent with regard to each cumulative punishment complaint raised by Petitioner:

> Defendant argues he received multiple punishments for the same offense. The multiple-punishment prong of the Double Jeopardy Clause constrains the

---

[4] Offenses that are the "same offense" under *Blockburger* implicate double jeopardy, but "simply because two criminal statutes proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes." *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). "The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent[;] . . . we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear." *Id.*; *see also Garrett v. United States*, 471 U.S. 773, 779 (1985) (the Court rejected Garrett's contention that Blockburger was "a conclusive determinant of legislative intent," suggesting instead that it was "a useful canon of statutory construction."); *and see White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009) ("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). Considering all of this authority, it appears the *Blockburger* test guides the reviewing court's determination of legislative intent the most where that intent is otherwise not clearly expressed.

judiciary but not the Legislature. *People v Miller*, 498 Mich 13, 17-18; 869 NW2d 204 (2015). Consequently, the issue of multiple punishments for the "same offense" presents a question of legislative intent. *Id*. at 18. When the Legislature does not clearly express its intent in a statute, "courts must then apply the abstract legal elements test" to determine whether the Legislature intended multiple punishments. *Id*. at 19. "This test focuses on the statutory elements of the offense to determine whether the Legislature intended for multiple punishments." *Id*. Under the abstract legal elements test, when each of the offenses for which a defendant is convicted contains an element that the other does not, they are not the "same offense" for purposes of the multiple-punishment prong of the Double Jeopardy Clause. *People v Ream*, 481 Mich 223, 225-226, 242; 750 NW2d 536 (2008). Thus, "two offenses will only be considered the 'same offense' where it is impossible to commit the greater offense without also committing the lesser offense." *Miller*, 498 Mich at 19.

The statutory language of [AGBH] and felonious assault does not evince a legislative intent with regard to multiple punishments. MCL 750.84; MCL 750.82. Likewise, the statutory language of felon-in-possession, felony-firearm, and CCW does not evince such intent. MCL 750.224f; MCL 750.227b; MCL 750.227. Accordingly, we must consider whether these offenses contain elements that the others do not. *Miller*, 498 Mich at 19.

Defendant's convictions for two counts of both [AGBH] and felonious assault (one count each for Hassel and Wright) did not violate the constitutional prohibition against double jeopardy "because the two crimes have different elements." *People v Strickland*, 293 Mich App 393, 401-402; 810 NW2d 660 (2011), citing *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007) ("Because the crimes have different elements, the defendant may be punished for each."). So, [AGBH] and felonious assault are not the "same offense" for purposes of double jeopardy.

Defendant's convictions of felon-in-possession, felony-firearm, and CCW also did not violate double jeopardy. In *People v Sturgis*, 427 Mich 392, 409-410; 397 NW2d 783 (1986), our Supreme Court held that convictions for both felony-firearm and CCW did not violate double jeopardy, provided that the CCW charge was not the predicate felony for felony-firearm. The predicate felonies for defendant's felony-firearm convictions were [AGBH] and felonious assault, not CCW. Therefore, defendant's convictions for felony-firearm and CCW did not violate double jeopardy. In *People v Dillard*, 246 Mich App 163, 167-168; 631 NW2d 755 (2001), this Court held that convictions for both felony-firearm and felon-in-possession did not violate double jeopardy. Accordingly, defendant's convictions for these two crimes did not violate double jeopardy. And, in *People v Mayfield*, 221 Mich App 656, 661-662; 562 NW2d 272 (1997), this Court held that convictions for both CCW and felon-in-possession did not violate double jeopardy. Accordingly, defendant's convictions for these two crimes did not violate double jeopardy. Thus, defendant's three firearm-related convictions do not violate the constitutional prohibition against double jeopardy.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1319–1320.)

The Michigan Court of Appeals' determinations regarding the Michigan legislature's intent to impose cumulative punishments bind this Court:

> Whether punishments are "multiple" under the double jeopardy clause is essentially a question of legislative intent. *Id*. at 499; *Missouri v. Hunter*, 459 U.S. 359, 366-68 (1983).
>
> When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes. *See Missouri v. Hunter*, 459 U.S. at 368; *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974). Under the double jeopardy clause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent. *See Ohio v. Johnson*, 467 U.S. at 499 ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *Missouri v. Hunter*, 459 U.S. at 368 ("In addition, the Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes."); *Brown v. Ohio*, 432 U.S. 161, 167 (1977) (Ohio Court of Appeals had "final authority to interpret that state's legislation."). As we observed in *Smith v. Sowders*, 848 F.2d 735, 739 (6th Cir. 1988), "The only significance of the 'same transaction' inquiry of the Kentucky Court of Appeals was to determine whether state law required the thefts to be treated as a single offense. That court's determination ended the inquiry. State courts interpret state criminal statutes, and their interpretations are binding on federal courts." *See also Hall v. Wainwright*, 493 F.2d 37, 41 (5th Cir. 1974).

*Banner v. Davis*, 886 F.2d 777, 779–80 (6th Cir. 1989); *see also Volpe v. Trim*, 708 F.3d 688, 697 (6th Cir. 2013) ("'[O]nce a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination.' . . . '"[T]here is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes."') (footnote omitted) (quoting *Banner*, 886 F.2d at 780 and *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010)). Because this Court is bound by the state court's determinations of legislative intent, Petitioner double jeopardy claims fails at the outset—there are not multiple punishments for the same offense where the offenses are not the same. Accordingly, Petitioner is not entitled to habeas relief on his double jeopardy claims.

24

## VII.    Improper scoring of sentence variables (habeas ground VI)

Petitioner next contests the constitutionality of his sentences, claiming that they violated the Sixth Amendment because they were based on facts found by the judge rather than facts found by the jury beyond a reasonable doubt or admitted by Petitioner.  Petitioner bases his argument on the line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013).  In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. at 490.  *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence.  In the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding.  The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt."  *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).[5]

Thereafter, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences.  In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables []

---

[5] Although the formulation of the rule that includes facts "admitted by the defendant" first appears in *Blakely*, 542 U.S. at 303, the substance of the rule is derived from *Apprendi*.  *Apprendi*, 530 U.S. at 488 ("Because Almendarez-Torres had admitted the three earlier convictions . . . no question concerning the right to a jury trial . . . was before the Court.").

that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original).[6]

The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520-21 (relying on *Booker,* 543 U.S. at 264-265 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).   For prisoners who had been sentenced before *Lockridge* was decided but whose cases pending on direct review, and who could demonstrate their guidelines minimum sentence range was constrained by a Sixth Amendment violation, and whose sentences were not subject to an upward departure, the supreme court established a remand procedure that would permit the trial court to determine if it would issue the same sentence under discretionary guidelines.   *Lockridge*, 870 N.W.2d at 522–24.   That is the relief Petitioner sought from the Michigan Court of Appeals:  remand for resentencing.

The court of appeals denied that relief because it concluded that the facts the judge relied upon to score Petitioner's guidelines were either found beyond a reasonable doubt by the jury, or they were admitted by Petitioner.   Thus, under the *Apprendi* line of cases, the sentence did not run afoul of the Sixth Amendment.   The appellate court explained its reasoning as follows:

> In this case, defendant argues that his guidelines minimum sentence ranges were actually constrained by a Sixth Amendment violation when the trial court engaged in judicial fact-finding to score OV 1 at 25 points, MCL 777.31(1)(a) (a firearm discharged at or toward a human being); scoring OV 2 at 5 points, MCL

---

[6] On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis.  *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018).  The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional.  *Robinson*, 901 F.3d at 714.  The court reasoned that, "[a]t bottom, Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences."  *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111-12).

777.32(1)(d) (the offender possessed or used a pistol, rifle, shotgun or knife); scoring OV 3 at 10 points, MCL 777.33(1)(d) (bodily injury requiring medical treatment occurred to a victim); and by scoring OV 9 at 10 points, MCL 777.39(1)(c) (2 to 9 victims were placed in danger of physical injury or death). Defendant reasons that the facts required for these OV scores were not necessarily found by the jury when it convicted him of two counts of [AGBH].  See *Stevens*, 306 Mich App at 628-629 (observing that while using a dangerous weapon and injury are not elements of [AGBH], they are evidence of intent).  Although defendant is correct concerning the elements of [AGBH], impermissible judicial fact-finding was not necessary to score the questioned OVs.  The scoring of OV 2 and OV 9 were supported by defendant's convictions of two counts of felonious assault, two counts of felony firearm, and CCW, that were charged on the basis that defendant used, possessed, and carried a pistol.  Thus, the scores of OV 2 and OV 9 were supported by facts found by the jury.  *Lockridge*, 498 Mich at 391-392, 399.

With respect OV 1, defendant admitted during his testimony at trial that he fired a pistol at or toward the two victims.  And, with respect to OV 3, defendant also testified at trial that his sister was shot during the incident and transported to the hospital.  Defendant further testified that he went to the hospital to see his sister and was concerned whether she would live.  That defendant's sister suffered a bodily injury (gunshot wound) requiring medical treatment as a result of this incident is a fair inference from defendant's admissions.

This Court recently addressed of the meaning of "admitted by the defendant" for the purpose of scoring offense variables in *People v Garnes*, ___ Mich App ___; ___ NW2d ___ (Docket No. 324035, July 19, 2016).  The *Garnes* Court held "that 'admitted by the defendant' under Lockridge means formally admitted by the defendant to the court, in a plea or in testimony or by stipulation or by some similar or analogous route."  *Id*., slip op at 3 (emphasis in original).  Defendant's testimony under oath at his own trial satisfies this formal admission criterion.  As such, defendant's Sixth Amendment rights were not violated.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1323–1324.)  Petitioner has never responded to the court of appeals' determination that any facts used to score the sentencing guidelines, to the extent they were not found beyond a reasonable doubt by the jury, were admitted by Petitioner when he testified.  His application for leave to appeal to the Michigan Supreme Court just ignored the court of appeals' determinations regarding Petitioner's testimony.  (Pet'r's Mot. for Leave to Amend Appl. for Leave to Appeal, ECF No. 11-11, PageID.1583–1588.)

As noted above, as determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and

27

convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis*, 658 F.3d at 531; *Lancaster*, 324 F.3d at 429;

*Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate

courts, as well as the trial court.  *See Sumner*, 449 U.S. at 546–547; *Jago*, 888 F.2d at 407 n.4.

Petitioner does not contest the court of appeals' factual determinations regarding his testimony at

all, so he certainly has not rebutted the presumption of correctness with clear and convincing

evidence.  Moreover, the court of appeals' application of the *Apprendi* line of authority, and the

interpretation of that authority in *Lockridge*, is neither contrary to, nor an unreasonable application

of, clearly established federal law.  Accordingly, Petitioner is not entitled to habeas relief on this

claim.

## VIII.    Ineffective assistance of trial counsel (habeas ground II)

Finally, Petitioner claims that he was denied the effective assistance of counsel.

The ineffective assistance of counsel claim raised in the petition reads as follows:

> [Petitioner's] federal and state constitutional rights to the effective
> assistance of counsel were violated where counsel failed to make crucial objections.
> In regards to ground two, ineffective assistance of counsel; the record as a whole
> supports herein [Petitioner's] assertions that his attorney was ill-prepared for trial
> as he over and over again failed miserably (see oral arguments of 11-20-2015 page
> 22) in objecting to errors of the prosecuting attorney.

(Pet., ECF No. 1, PageID.7.)  Although Petitioner makes reference to "oral arguments of 11-20-

2015,"  it appears he meant to refer to the appeal brief prepared by counsel.  That document was

filed on November 20, 2015; oral argument occurred much later, on August 3, 2016.  Moreover,

the argument regarding ineffective assistance of counsel starts on page 22 of that brief.  The Court

concludes that the ineffective assistance issue Petitioner raises in this Court is limited to counsel's

failure to object to the prosecutorial misconduct described in habeas ground I.[7]

---

[7] Petitioner raised other ineffective assistance of counsel issues in the Michigan Court of Appeals by way of *his pro per* supplemental brief.  (Pet'r's *Pro Per* Supp. Appeal Br., ECF No. 11-10, PageID.1480–1486.)  He argued that counsel was ineffective for failing to contest the sufficiency of the evidence based on the absence of physical injury,

The Michigan Court of Appeals addressed that ineffective assistance of counsel issue as follows:

> The right to the effective assistance of counsel is guaranteed by the United States and Michigan constitutions.  US Const Am VI; Const 1963, art 1, § 20; *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039, 80 L Ed 2d 657 (1984); *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010).  "Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise."  *Swain*, 288 Mich App at 643.  "To prove a claim of ineffective assistance of counsel, a defendant must establish that counsel's performance fell below objective standards of reasonableness and that, but for counsel's error, there is a reasonable probability that the result of the proceedings would have been different."  *Id*.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984).
>
> Defendant was not deprived of the effective assistance of counsel by his trial counsel's failure to object to the alleged instances of prosecutorial misconduct.  As discussed, the prosecutorial remarks cited by defendant did not constitute misconduct, so any objection by his trial counsel would have been futile.  Counsel is not ineffective for failing to make meritless objections.  *People v Matuszak*, 263 Mich App 42, 58; 687 NW2d 342 (2004).  Further, because any objection by defendant's trial counsel would have been futile, defendant cannot establish a reasonable probability that but for his trial counsel's failure to object, the outcome of the trial would have been different.  *Swain*, 288 Mich App at 643.  Moreover, the jury was properly instructed that the prosecutor's statements were not evidence, and jurors are presumed to follow their instructions.  *Unger*, 278 Mich App at 237.  Accordingly, defendant was not deprived of the effective assistance of counsel due to his trial counsel's failure to object to the alleged instances of prosecutorial misconduct.

(Mich. Ct. App. Op., ECF No. 11-10, PageID.1321.)

Under clearly established federal law, to show ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in

---

for failing to object to the overcharging and double jeopardy problems, for allowing the trial in the absence of voir dire and an appropriate jury oath, and for counsel's failure to investigate and call several witnesses that Petitioner contends would have supported his position at trial.  (*Id*.)  In his application for leave to appeal to the Supreme Court, Petitioner raised counsel's failure to object to prosecutorial misconduct, counsel's failure to object to the jury selection and oath irregularities, and counsel's failure to investigate and call several witnesses. (Pet'r's Appl. for Leave to Appeal, ECF No. 11-11, PageID.1549–1555, 1562.)

an unreliable or fundamentally unfair outcome.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  A court considering a claim of ineffective assistance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).  Even if a court determines that counsel's performance, in light of the circumstances as they existed at the time of counsel's action, was outside the wide range of reasonable professional assistance, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 690–91.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Although the court of appeals cited some state authorities and some federal authorities as the source of the standard, the standard applied is functionally identical to the standard applied under clearly established federal law.  Accordingly, the only question that remains is whether the court of appeals applied the standard reasonably.  The appellate court's conclusion that counsel cannot be deemed to be ineffective for failing to raise meritless objections is patently

reasonable.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Accordingly, Petitioner is not entitled to habeas relief on this claim.

## IX.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.


Dated:    March 19, 2021                                       /s/ *Maarten Vermaat*
                                                                       Maarten Vermaat
                                                                       United States Magistrate Judge


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).